# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ALEXIS DAVIS,                          :
                                       :
          **Plaintiff,**               :
                                       :
     v.                                :   **Case No.:**  2:21-cv-1711
                                       :
THE PENNSYLVANIA DEPARTMENT            :
OF MILITARY AND VETERANS               :   **COMPLAINT IN CIVIL ACTION**
AFFAIRS and SOUTHWESTERN               :
VETERANS CENTER,                       :
                                       :
          **Defendant.**               :


Filed on Behalf of Plaintiff:
Alexis Davis

Counsel of Record for this Party:
**J.P. WARD & ASSOCIATES, LLC**

Joshua P. Ward
Pa. I.D. No. 320347

J.P. Ward & Associates, LLC
The Rubicon Building
201 South Highland Avenue
Suite 201
Pittsburgh, PA 15206

Telephone:     (412) 545-3015
Fax No.:       (412) 540-3399
E-mail:        jward@jpward.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ALEXIS DAVIS,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **Case No.:**  2:21-cv-1711 |
| | : | |
| **THE PENNSYLVANIA DEPARTMENT** | : | |
| **OF MILITARY AND VETERANS** | : | |
| **AFFAIRS and SOUTHWESTERN** | : | |
| **VETERANS CENTER,** | : | |
| | : | |
| **Defendant.** | | |

**COMPLAINT IN CIVIL ACTION**

AND NOW, comes Plaintiff, Alexis Davis, by and through the undersigned counsel, J.P. Ward & Associates, LLC., and, specifically, Joshua P. Ward, Esquire, who files the within Complaint in Civil Action against Defendants, The Pennsylvania Department of Military and Veterans Affairs and Southwestern Veterans Center, of which the following is a statement:

**PARTIES**

1.      Plaintiff, Alexis Davis (hereinafter "Ms. Davis"), is an adult individual who currently resides at 645 Hillside Drive, Pittsburgh, Pennsylvania 15235.

2.      Defendant, The Pennsylvania Department of Military and Veterans Affairs is an organization located at Ft. Indiantown Gap, Annville, Pennsylvania 17003.

3.      Defendant, Southwestern Veterans Center is an entity of the Pennsylvania Department of Military and Veterans Affairs and is located at 7060 Highland Drive, Pittsburgh, Pennsylvania 15206.

## NATURE OF THE ACTION

4.      This action arises under Title VII of the Civil Rights Act of 1964 ("Title VII") 42

U.S.C. § 2000e *et seq*., the Pennsylvania Human Relations Act ("PHRA") 43 P.S. §§ 951-963,

Section 1981 of the Civil Rights Act of 1866 ("Section 1981") 42 U.S.C. § 1981, the Americans

with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*., and the Family Medical Leave Act

("FMLA") 29 U.S.C. § 2601 *et seq.*

## JURISDICTION AND VENUE

5.       This Court has jurisdiction over Ms. Davis's discrimination claims pursuant to 28

U.S.C. § 1331.

6.      Ms. Davis is a resident and citizen of Pennsylvania, a substantial amount of the

events or omissions giving rise to the claims occurred in Western Pennsylvania, and, therefore,

this action is within the jurisdiction of the United States District Court for the Western District of

Pennsylvania and the venue is proper pursuant to 25 U.S.C. § 1391(b).

7.      Ms. Davis filed a timely charge with the Equal Employment Opportunity

Commission ("EEOC") regarding her allegations within the purview of the PHRA, the ADA, and

Title VII, on or about March 19, 2021, under case number 533-2021-01002. On September 7,

2021, Ms. Davis was issued a Notice of Suit Rights. The Complaint now timely follows.

## PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS

8.      Ms. Davis was employed by the Pennsylvania Department of Military and Veterans

Affairs through the Southwestern Veteran's Center (hereinafter, collectively, "Defendants") for

nearly 16 years.

9.      Ms. Davis was a nursing home unit clerk, earning $19.60 per hour.

10.     Ms. Davis is an African American woman who was highly qualified for the position she held with Defendants and regularly received positive reviews for her work.

11.     The director of nursing, Ronna Stewart, (hereinafter, "Ms. Stewart") was one of Ms. Davis's supervisors.

12.     Upon information and belief, Ms. Stewart had been previously suspended for wrongfully terminating African American employees.

13.     Ms. Stewart was constantly disrespectful toward Ms. Davis and the other African American employees.

14.     Ms. Stewart subjected the African American employees to a heightened level of scrutiny.

15.     Ms. Stewart had a regular pattern of mistreatment and harassment toward African American employees, including Ms. Davis.

16.     On one such occasion, Ms. Steward informed Ms. Davis that she monitored Ms. Davis while Ms. Davis took her lunch breaks.

17.     On another occasion, on or about a date in 2019, Ms. Stewart forced Ms. Davis to fill out a "white slip" which stated Ms. Davis was late for work even though Ms. Davis had punched in on time.

18.     On or about a date in early 2020, Ms. Stewart became physically aggressive with Ms. Davis and snatched a phone out of her hands.

19.     Ms. Davis filed multiple grievances and reports to the union against Ms. Stewart on account of her discriminatory treatment.

20.     Additionally, Ms. Davis regularly suffered from severe, chronic migraines. This is a disability which affected her major life activities and one which she had disclosed to Defendants, along with providing a physician's note.

21.     On one occasion in 2020, Ms. Davis had a migraine so severe that she was unable to come out of the break room for over an hour.

22.     Ms. Stewart observed Ms. Davis on the cameras in the break room and proceeded to hold a hearing regarding Ms. Davis staying in the break room for this period of time.

23.      Ms. Davis disclosed in the hearing that the reason she was in the break room at this time was because she was having a severe migraine episode.

24.     Ms. Davis was subsequently terminated from her position, on or around August 3, 2020, due to her severe migraine episode.

25.     Furthermore, Ms. Davis was previously granted FMLA leave due to her migraines, as they are a serious health condition.

26.     However, Ms. Davis was sent a letter on or about August 12, 2020, just days following her termination, which indicated that her most recent FMLA request was denied.

27.     Ms. Davis affirms that her FMLA was formerly approved, in a letter dated February 19, 2020, for the same health condition.

28.     Ms. Davis proceeded to file a termination grievance which was presented on November 18, 2020 and denied. Therefore, Ms. Davis's termination was upheld.

29.     Ms. Davis' termination is a direct result of race, disability, and/or FMLA invocation.

## COUNT I
## RACIAL DISCRIMINATION IN
## VIOLATION OF SECTION 1981

30.     Ms. Davis incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

31.     42 U.S.C. § 1981(a) provides that:

> "[a]ll persons within the jurisdiction of the United States shall have the same right … to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws …as is enjoyed by white citizens."

*Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 460 (1975) (holding that Section 1981 "affords a federal remedy against discrimination in private employment on the basis of race."); see also, *Comcast Corp. v. Natl. Assn. of African Am.-Owned Media*, 140 S. Ct. 1009, 1010 (2020).

32.     Thus, Section 1981 prohibits employers from engaging in intentional racial discrimination.

33.     Ms. Davis experienced discrimination from her supervisor, Ms. Stewart in the form of severe disparate treatment, harassment, and ultimately termination from employment.

34.     Defendants subjected Ms. Davis to the above-mentioned adverse employment actions, and not her Caucasian counterparts. Therefore, Defendant deprived Ms. Davis of the full and equal benefit of all laws as is enjoyed by white citizens, in direct violation of Section 1981.

35.     Defendants subjected Ms. Davis to the adverse employment actions because of her race, and therefore deprived her the same right to make and enforce contracts as is enjoyed by white citizens, in direction violation of Section 1981.

36.     Defendants' actions against Ms. Davis were undertaken with wanton, willful and reckless indifference to Ms. Davis's federally protected right to make and enforce contracts regardless of her race.

37.     As a direct and proximate result of the aforementioned conduct, Ms. Davis suffered actual damages, including, but not limited to, lost wages, benefits, emotional distress, anxiety, loss of reputation, loss of professional opportunities, humiliation and severe inconvenience all in the past present and future.

WHEREFORE, Plaintiff, Alexis Davis, hereby requests this Honorable Court consider the above and grant relief in her favor. Specifically, Plaintiff requests this Court award her back pay, front pay, any other compensatory and punitive damages as calculated by the Court, pre-judgment and continuing interest as calculated by the Court, costs, and reasonable attorney's fees.

<u>**COUNT II**</u>
**HOSTILE WORK ENVIRONMENT IN**
**VIOLATION OF SECTION 1981**

38.     Ms. Davis incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

39.     To establish a § 1981 claim alleging a hostile work environment based on race, a plaintiff must show that: "(1) the employee suffered intentional discrimination because of his/her race, (2) the discrimination was severe or pervasive, (3) the discrimination detrimentally affected the plaintiff, (4) the discrimination would detrimentally affect a reasonable person in like circumstances, and (5) the existence of respondeat superior liability, meaning the employer is responsible." *Castleberry v. STI Group*, 863 F.3d 259, 263 (3d Cir. 2017)

40.     Ms. Davis faced discriminatory treatment in the form of racially discriminatory culture and environment during the course of her employment with Defendants.

41.     Ms. Davis's supervisor, Ms. Stewart created a racially hostile work environment for Ms. Davis, and had been previously disciplined for her discriminatory conduct toward African American employees.

42.     Furthermore, Defendants, by and through Ms. Stewart, terminated Ms. Davis's employment because of the heightened scrutiny on the basis of race.

43.     Therefore, Defendants permitted, condoned, and perpetuated the racially hostile work environment to which Ms. Davis was forced to endure, and therefore deprived her of the same right to make and enforce contracts as is enjoyed by white citizens, in violation of the Civil Rights Act of 1866, 42 U.S.C. §1981.

44.     Defendants' actions against Ms. Davis were undertaken with reckless indifference to Ms. Davis's federally protected right to make and enforce contracts irrespective of her race.

45.     As a result of Defendants' race discrimination against Ms. Davis, Ms. Davis has suffered and continues to suffer damages, including but not limited to lost wages and benefits, anxiety, loss of reputation, lost career opportunities, emotional distress, humiliation and inconvenience.

WHEREFORE, Plaintiff, Alexis Davis, hereby requests this Honorable Court consider the above and grant relief in her favor. Specifically, Plaintiff requests this Court award her back pay, front pay, any other compensatory and punitive damages as calculated by the Court, pre-judgment and continuing interest as calculated by the Court, costs, and reasonable attorney's fees.

<u>**COUNT III**</u>
**RACIAL DISCRIMINATION IN VIOLATION**
**OF TITLE VII AND THE PHRA**

46.     Ms. Davis incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

47.     Under Title VII, it is illegal for an employer to "fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation,

terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.A. §2000e-2(a)(1).

48.     When analyzing a claim of discrimination under Title VII, a plaintiff must show: "(1) he is a member of a protected class; (2) he was qualified for the position he sought to attain or retain; (3) he suffered an adverse employment action; and (4) either similarly-situated non-members of the protected class were treated more favorably or the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Langley v. Merck & Co.*, 186 Fed Appx. 258 (3d Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 36 L. E.D. 29 668 (1973).  See also *Makky v. Chertoff*, 542 F.3d 205, 214 (3d Cir. 2008).

49.     The same legal standards apply to Title VII and PHRA claims. *Connelly v. LaneConstr. Corp.*, 809 F.3d 780, 791 (3d Cir. 2016) (citing *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 317 (3d Cir. 2000)). Further, the same standards apply to claims under Title VII and the PHRA on a summary judgment motion. *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999). Accordingly, the Court's analysis of the Title VII claims also applies to the PHRA claims. *Phillips v. Septa*, CIVIL ACTION NO. 16-0986, 6-7 (E.D. Pa. Feb. 12, 2018).

50.     Pennsylvania courts have determined that an adverse employment action is "an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Jones v. SEPTA*, 796 F.3d 323, 326 (3d Cir. 2015) (quoting *Storey v. Burns Int'l Sec. Serv.*, 390 F.3d 760, 764 (3d Cir. 2004)).

51.     Under Title VII, for other employees to be considered "similarly situated," they must have "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."  *Morales v. Pnc Bank, N.A.*, 2012 U.S. Dist. LEXIS 143605 *23 (E.D. Pa. 2012).

52.     Pennsylvania courts have held that comparison factors for "similarly situated employees" have included "dealing with the same supervisor, having been subject to the same standards, and engaging in the same conduct without differentiating and mitigating circumstances." *Id*.

53.     A plaintiff may also satisfy the fourth element by "showing other circumstances that give rise to an inference of unlawful discrimination." *Senador v. Zober Indus.*, 2009 U.S. Dist. LEXIS 36059 *9 (E.D. Pa. 2009).

54.     Ms. Davis was an African American employee and was regarded in a fashion that was different from her Caucasian counterparts.

55.     Ms. Davis was qualified for her position and was regularly given positive performance reviews throughout her time employed with Defendants.

56.     Ms. Davis faced discriminatory treatment in the form of a racially discriminatory culture and environment perpetuated by her supervisor, Ms. Stewart.

57.     This racially discriminatory environment included heightened scrutiny, harassment, and ultimately, termination from employment.

58.     As a direct and proximate cause of the aforementioned conduct, Ms. Davis suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present and future.

59.     As set forth hereinabove, Defendants' actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

WHEREFORE, Plaintiff, Alexis Davis, hereby requests this Honorable Court consider the above and grant relief in her favor. Specifically, Plaintiff requests this Court award her back pay,

front pay, any other compensatory and punitive damages as calculated by the Court, pre-judgment and continuing interest as calculated by the Court, costs, and reasonable attorney's fees.

**<u>COUNT IV</u>**
**HOSTILE WORK ENVIRONMENT IN VIOLATION**
**OF TITLE VII AND THE PHRA**

60.     Ms. Davis incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

61.     The protections established by Title VII include "protection against a hostile work environment that is abusive to an employee on the basis of his or her race." *Bryant v. Wilkes-Barre Hops., Co., LLC*, 146 F. Supp. 3d 628, 645 (M.D. Pa. 2015).

62.     In order to establish a hostile work environment claim, a plaintiff must show that: "(1) he suffered intentional discrimination because of race and/or national origin; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same protected class in that position; and (5) the existence of vicarious or respondent superior liability." *Senador* at \*25 (citing *Cardenas v. Massey*, 269 F.3d 251, 260 (3d Cir. 2001)).

63.     The analytical framework used to evaluate a claim under the PHRA is effectively indistinguishable from that under Title VII. See *Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 409 (3d Cir. 1999).

64.     Because Complainant is able to state a *prime facie* case for race discrimination and hostile work environment under Title VII, so too will he be able to state such a claim under the PHRA.

65.     The United States Supreme Court "has held that when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that it is sufficiently severe or pervasive to

11

alter the conditions of the victim's employment and create an abusive working environment, Title VII . . . is violated." *Washington v. Martinez*, 2004 U.S. Dist. LEXIS 4325 at *16 - *17 (E.D. Pa. 2004).

66.     Courts have held that "whether an environment is 'hostile' or 'abusive' can be determined only by looking at all of the circumstances.  These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Washington* at *17 - *18 (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 22 (1993)).

67.     Conditions that create a hostile working environment "may constitute a significant change in benefits and establish the adverse action necessary to state a prima facie case of discrimination." *Washington* at *17.

68.     Ms. Davis faced a hostile work environment in the form of racially discriminatory treatment, culture and environment throughout her employment.

69.     Ms. Davis's supervisor, Ms. Stewart created a racially hostile work environment when she subjected Ms. Davis, and the other African American employees, to heightened scrutiny which she did not subject Ms. Davis's similarly situated coworkers too.

70.     Furthermore, Ms. Stewart harassed Ms. Davis, forced her to sign slips which stated she was late, and physically snatched a phone out of Ms. Davis's hand.

71.     Finally, Defendants terminated Ms. Davis based on pretextual circumstances.

72.     Therefore, Defendants permitted, condoned, and perpetuated the racially hostile work environment to which Ms. Davis was forced to endure.

73.     As a direct and proximate cause of the aforementioned conduct, Ms. Davis suffered

actual damages, including, but not limited to, wage loss, loss of income, and emotional distress

damages, all in the past, present and future.

74.     As set forth hereinabove, Defendants' actions were intentional, knowing, wanton,

willful, and so outrageous as to shock the conscience.

WHEREFORE, Plaintiff, Alexis Davis, hereby requests this Honorable Court consider the

above and grant relief in her favor. Specifically, Plaintiff requests this Court award her back pay,

front pay, any other compensatory and punitive damages as calculated by the Court, pre-judgment

and continuing interest as calculated by the Court, costs, and reasonable attorney's fees.

**COUNT V**
**DISCRIMINATION IN VIOLATION**
**OF THE ADA AND THE PHRA**

75.     Ms. Davis incorporates the allegations contained in the paragraphs, above, as if

fully set forth at length herein.

76.     The inquiry into whether a person is disabled under the ADA is made on a case-by

case analysis. *EEOC v. Grane Healthcare Co.,* 2 F. Supp. 3d 667, 694 (W.D. Pa. 2014); *Chedwick

v. UPMC,* 2011 U.S. LEXIS 43239 *35 (W.D. Pa. 2011). To establish a prima facie case of

discrimination under the ADA, Plaintiff must show: (1) he is a disabled person within the meaning

of the ADA; (2) he is otherwise qualified to perform the essential functions of his job, with or

without reasonable accommodations by the employer; and (3) he suffered an otherwise adverse

employment decision as a result of discrimination. *See McGarvey v. Te Connectivity, Ltd.,* 2018

U.S. Dist. LEXIS 124788 *15 (M.D. Pa. 2018); *Northern v. Susquehanna Univ.,* 2018 U.S. Dist.

LEXIS 214349 *28 (M.D. Pa. 2018).

77.     The PHRA is modeled similarly to the ADA and shares similar burdens. The

analytical framework used to evaluate a disability discrimination claim under the PHRA is

effectively indistinguishable from that under the ADA, thus allowing courts to dispose of both ADA and PHRA claims on the same grounds. *Bialko v. Quaker Oats Co.*, 434 F. App'x. 139, 142 n.5 (3rd Cir. 2011) (citing *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 382 (3d Cir. 2002) (noting that the PHRA, in all "relevant respects," was "basically the same as the ADA" and was interpreted "in accord" with the ADA and related case law, thus meaning that "disposition of [plaintiff's] ADA claim applie[d] with equal force to his PHRA claim."

78.     Under the ADA, an individual has a disability if he: (1) has a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. *Thomas v. Trs. Of the Univ. of Pa.,* 2020 U.S. Dist. LEXIS 11056 *9 (E.D. Pa. 2020) (quoting *Lackey v. Heart of Lancaster Reg'l Med. Ctr.,* 704 F. App'x 41, 48 (3d Cir. 2017)).

79.     In 2008, the ADA was amended to change its definition of disability, with the amendment effective as of January 1, 2009. *See McDonald v. PA. State Police*, 532 F.App'x 176 n.1 (3d Cir. 2013).

80.     Under the ADAAA, "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Berkowitz v. Oppenheimer Precision Prods.,* 2014 U.S. Dist. LEXIS 152533 at *8-9 (E.D. Pa. Oct. 28, 2014).

81.     As set forth hereinabove, Ms. Davis is disabled within the meaning of the ADA.

82.     At all times relevant to employment with Defendants, Ms. Davis suffered from severe migraines, which affect Ms. Davis's major life activities. Ms. Davis disclosed this disability to Defendants.

83.     Ms. Davis was a highly qualified individual who is competent to successfully complete the necessary functions of her job, given her 16 years of success in the position.

84.     There is no evidence to suggest Ms. Davis lacked any qualifications necessary to perform the functions of her job.

85.     Ms. Davis's disability caused her to need brief breaks to manage the pain from her migraines.

86.     Ms. Davis suffered an adverse employment decision in the form of termination from employment. Ms. Davis was informed that this termination was due to an instance where she spent an hour in the breakroom due to a severe migraine, and therefore a direct result of her disability.

87.     As a direct and proximate cause of the aforementioned conduct, Ms. Davis suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present and future.

88.     As set forth hereinabove, the Defendants' actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

WHEREFORE, Plaintiff, Alexis Davis, hereby requests this Honorable Court consider the above and grant relief in her favor. Specifically, Plaintiff Colleen Stratton requests this Court award her back pay, front pay, any other compensatory and punitive damages as calculated by the Court, pre-judgment and continuing interest as calculated by the Court, costs, and reasonable attorney's fees.

## COUNT VI
## FAILURE TO ACCOMMODATE IN
## VIOLATION OF THE ADA AND THE PHRA

89.     Plaintiff incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

90.     To prevail on a claim of failure to accommodate, Plaintiff must establish that "(1) the employer knew about the disability; (2) he requested accommodations or assistance for his disability; (3) the employer did not make a good faith effort to assist him in seeking accommodations; and (4) he could have been reasonably accommodated but for the employer's lack of good faith." *Tourtellotte v. Eli Lily & Co.*, 636 F.App'x 831, 849 (3d Cir. 2016) (internal citations omitted); *See also Sharbaugh v. West Haven Manor, LP,* 2016 U.S. Dist. LEXIS 161264 *29 (W.D. Pa. 2016).

91.     In the case at hand, Ms. Davis is disabled within the meaning of the ADA.

92.     Ms. Davis was qualified to successfully perform the necessary functions of her job and done so successfully for over 16 years.

93.     Ms. Davis informed Defendants of her disability and was aware of her need to occasionally take a break to manage the pain from her disability.

94.     Instead of allowing Ms. Davis the brief breaks, Defendants terminated Ms. Davis's employment.

95.     Defendants refused to accommodate Ms. Davis's disability and allow her to take brief occasional breaks to manage the symptoms of her disability.

96.     Ms. Davis could have been readily and reasonably accommodated by Defendants, however Defendants failed to provide even a modicum of good faith or a willingness to engage in the accommodations process.

97.     As a direct and proximate cause of the aforementioned conduct, Ms. Davis suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present and future.

98.     As set forth hereinabove, the Defendants' actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

WHEREFORE, Plaintiff, Alexis Davis, hereby requests this Honorable Court consider the above and grant relief in her favor. Specifically, Plaintiff requests this Court award her back pay, front pay, any other compensatory and punitive damages as calculated by the Court, pre-judgment and continuing interest as calculated by the Court, costs, and reasonable attorney's fees.

<u>**COUNT VII**</u>
**FMLA INTERFERENCE**

99.     Ms. Davis incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

100.     The FMLA provides in pertinent part, "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" these rights, violation of which is known as FMLA retaliation. *Lichtenstein v. U. of Pittsburgh Med. Ctr*., 691 F.3d 294, at 307 (3d Cir. 2012) (citing to 29 U.S.C. § 2615(a)(1)).

101.     In order to demonstrate a claim for FMLA interference, a Plaintiff must establish: "(1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA." *Ross v. Gilhuly*, 755 F.3d 185, 191–92 (3d Cir. 2014) (citing to *Johnson v. Cmty. Coll. of Allegheny Cnty*., 566 F.Supp.2d 405, 446 (W.D. Pa. 2008); see also, *Sommer v. The Vanguard Grp*., 461 F.3d 397, 399 (3d Cir. 2006)).

102.     Moreover, an employee does not need to prove that invoking FMLA rights was the sole or most important factor upon which the employer acted." *Lichtenstein v. U. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301 (3rd Cir. 2012).

103.     Under this regulatory interpretation, employers are barred from considering an employee's FMLA leave "as a negative factor in employment actions such as hiring, promotions, or disciplinary actions." *Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005).

104.     Ms. Davis was employed for a qualified employer under the FMLA and was therefore entitled to leave pursuant to the FMLA.

105.     Ms. Davis acknowledged and exercised her FMLA rights when she provided Defendant with the appropriate FMLA paperwork pursuant to her health condition.

106.     Although not a formalistic standard to invoke rights under the FMLA, employees must give their employer "adequate notice", and in doing so the employee "need not expressly assert rights under the FMLA, or even mention the FMLA." Lichtenstein v. U. of Pittsburgh Med. Ctr., 691 F.3d 294, at 303 (3d Cir. 2012) (interpreting the language of 29 U.S.C. § 2612(e)(2) and  29 C.F.R. § 825.303(b)).

107.     While Ms. Davis's FMLA leave was previously approved for an identical health condition on or about February of 2020, Ms. Davis received paperwork denying her FMLA leave request, just days after her termination.

108.     Ms. Davis's termination was the ultimate result of the invocation of her FMLA rights on or about August of 2020.

109.     Between the invocation of FMLA rights, the denial of Plaintiff's FMLA leave, and the adverse employment decision, Plaintiff's employer actively interfered with her right to take FMLA leave in direct violation of 29 U.S.C. § 2615(a)(1).

110.    Defendants violated Plaintiff's rights by interfering with and/or restraining the exercise of Plaintiff's FMLA leave in direct violation of 29 U.S.C. § 2615(a)(1).

WHEREFORE, Plaintiff, Alexis Davis, respectfully requests this Honorable Court enter judgment in her favor and against Defendant, and enter any and all wages due to Plaintiff, in excess of arbitration limits, as well as reasonable costs and attorney's fees and liquidated damages pursuant to the Family and Medical Leave Act of 1993 29 U.S.C. § 2601 *et seq.*

**COUNT VIII**
**RETALIATION IN VIOLATION OF THE FMLA**

111.    Plaintiff incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

112.    In order to prevail on a claim of retaliation under the FMLA, one must prove that: (1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights. *Lichtenstein v. U. of Pittsburgh Med. Ctr.,* 691 F.3d 294, 302 (3d Cir. 2012).

113.    Ms. Davis invoked her right to FMLA qualifying leave when she requested to utilize FMLA time on or about August of 2020.

114.    Ms. Davis is an eligible employee under 29 U.S.C.A §2611(2) who invoked her right to FMLA-qualifying leave for her serious health condition.

115.    Plaintiffs need only to show evidence that creates an inference that a causative link exists between the FMLA leave and termination. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279-81 (3d Cir. 2000); see also, 29 U.S.C.A. § 2615(a)(2).

116.    "When the temporal proximity between the protected activity and adverse action is unduly suggestive, this is sufficient standing alone to create an inference of causality…"

*Lichtenstein v. U. of Pittsburgh Med. Ctr.*, 691 F.3d 294, at 307 (3d Cir. 2012) (citing *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n,* 503 F.3d 217, 232 (3d Cir. 2007)).

117.     Ms. Davis was previously approved for FMLA leave on or about February of 2020 for her health condition.

118.     Ms. Davis again requested FMLA leave on or about August of 2020.

119.     Plaintiff was terminated on or about August 3, 2020 and received paperwork denying her FMLA leave on or about August 12, 2020, just following her termination from employment.

120.     Due to the temporal proximity of the actions taken by Defendants, there is more than an inference, and in fact a direct causal relationship between the termination of Plaintiff's employment and the invocation of her FMLA rights.

121.     As a direct and proximate result of the aforementioned conduct, Ms. Davis suffered actual damages, including, but not limited to, lost wages, emotional distress all in the past present and future.

WHEREFORE, Plaintiff, Alexis Davis, hereby requests this Honorable Court consider the above and grant relief in her favor. Specifically, Plaintiff requests this Court award her back pay, front pay, any other compensatory and punitive damages as calculated by the Court, pre-judgment and continuing interest as calculated by the Court, costs, and reasonable attorney's fees.

**JURY TRIAL DEMANDED**

Respectfully submitted,

**J.P. WARD & ASSOCIATES, LLC.**

Date: November 23, 2021                    By: */s/ Kyle H. Steenland*
                                               Kyle H. Steenland (Pa. I.D. No. 327786)
                                               Joshua P. Ward (Pa. I.D. No. 320347)

                                               J.P. Ward & Associates, LLC
                                               The Rubicon Building
                                               201 South Highland Avenue
                                               Suite 201
                                               Pittsburgh, PA 15206

                                               Counsel for Plaintiff